

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | § § § | |
| Plaintiff, | § | |
| vs. | § § | CIVIL ACTION NO. 6:16-01685-MGL |
| MORNINGSTAR CONSULTANTS, INC., | § § | |
| Defendant. | § | |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This is an insurance declaratory judgment action filed by Plaintiff State Farm Fire and

Casualty Company (State Farm) against Defendant Morningstar Consultants, Inc. (MCI).  The Court

has jurisdiction over the matter under 28 U.S.C. § 1332.

Pending before the Court are two motions for summary judgment: one from MCI, asking the

Court to dismiss State Farm's claim, and the other from State Farm, requesting the Court to hold

MCI's insurance claim is excluded from coverage.  Having considered the motions, the responses,

the record, and the applicable law, it is the judgment of the Court it will deny MCI's motion and

grant State Farm's motion.

## II.    FACTUAL AND PROCEDURAL HISTORY

This case concerns whether State Farm has a duty to defend and cover MCI for eight state lawsuits (the state lawsuits) arising out of alleged property damage to certain construction projects of which MCI allegedly provided inspection services.  In the state lawsuits, the plaintiffs brought allegations against MCI concerning its purported negligence in its rendering or failing to provide inspections of the building units.  Centex Homes, the builder of all of the pertinent construction projects, hired MCI to conduct inspections of Centex's and its subcontractor's work.

The parties agree there are two insurance policies at issue here (collectively, the two policies).  The initial policy State Farm issued to MCI covered the time period February 9, 2000, to February 9, 2012 (the first policy).  The first policy contains the following relevant language: "This insurance does not apply . . . to **bodily injury, property damage** or **personal injury** due to rendering or failure to render any professional services or treatments.  This includes . . . supervisory or inspection services[.]"  ECF No. 1 at 5.

The other policy applies to the time period February 9, 2012 to February 9, 2016 (the second policy).  It states: "[T]his insurance does not apply to . . . [b]odily injury[,] property damage[,] or personal and advertising injury arising out of the rendering or failure to render any professional service or treatment.  This includes . . . [s]upervisory [and] inspection . . . activities[.]"  *Id*. at 7 (internal quotation marks omitted).

After MCI became aware of the state lawsuits, it gave timely notice to State Farm of them.  State Farm then filed suit in this Court seeking a declaratory judgement it owes no duty to defend or indemnify MCI against the state lawsuits.  Thereafter, each party filed their motions for summary judgment.

MCI has agreed to allow State Farm's motion for summary judgment to serve as its response to MCI's motion; and State Farm has consented to having MCI's motion for summary judgment be construed as its response to State Farm's motion. The Court, having been fully briefed on the relevant issues, will now adjudicate both motions.

## III.    STANDARD OF REVIEW

### A.    *Summary Judgment*

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the burden of proving summary judgment is appropriate. Once the moving party makes this showing, the opposing party is unable to rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported

speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996). "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B.    Policy Interpretation

Under South Carolina law, insurance policies are subject to the general rules of contract construction. *Nationwide Mut. Ins. Co. v. Commercial Bank*, 479 S.E.2d 524, 526 (S.C. 1996). The Court must afford policy language its plain, ordinary, and popular meaning. *Diamond State Ins. Co. v. Homestead Indus. Inc.*, 456 S.E.2d 912, 915 (S.C. 1995). The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract. *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 349 (S.C. 1976).

"[T]he Court will look to the reasonable expectations of the insured at the time when he entered into the contract if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print. But the doctrine is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language." *Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399, 407 (S.C. 2014) (citation omitted) (internal quotation marks omitted).

4

To be clear, the insurer's duty under a policy of insurance is set forth by the terms of the policy and cannot be enlarged by judicial construction. *S.C. Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. 1990). The Court is "without authority to alter a contract by construction or to make new contracts for the parties." *C.A.N. Enterps., Inc. v. S.C. Health & Human Servs. Fin. Comm'n*, 373 S.E.2d 584, 587 (1988) (citation omitted). Instead, its "duty is limited to the interpretation of the contract made by the parties themselves[,] regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully." *Id.* (citation omitted) (internal quotation marks omitted) (alteration omitted). When ambiguous or conflicting terms are found in an insurance policy, however, those terms must be construed liberally in favor of the insured and strictly against the insurer. *Diamond State Ins. Co.*, 456 S.E.2d at 915.

The extent to which courts interpret the language of an insurance policy differently is evidence of ambiguity. *Greenville Cty. v. Ins. Reserve Fund*, 443 S.E.2d 552, 553 (S.C. 1994). Courts may look to a dictionary to decipher the meaning of ambiguous, undefined terms. *Id.* Nevertheless, if the intent of the parties is clear, the Court has no authority to torture the meaning of policy language or to extend or defeat coverage that was never intended by the parties. *Diamond State Ins. Co.*, 456 S.E.2d at 915.

Where a motion for summary judgment presents a question pertaining to the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous. *Moss v. Porter Bros.*, 357 S.E.2d 25, 27 (S.C. 1987). Summary judgment is appropriate in such a case where the intention of the parties regarding the legal effect of the contract may be gathered from its four corners. *Id.*

"Questions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the third party's complaint. If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.* (*Monticello*), 459 S.E.2d

318, 319 (S.C. Ct. App. 1994) (citations omitted).  An exclusion, however, serves to negate coverage when it is set forth in the insurance policy.  *See USAA Property & Casualty Ins. Co. v. Rowland*, 435 S.E.2d 879, 882 (S.C. Ct. App. 1993).

It is the insured's burden to establish that a claim falls within the coverage of an insurance contract.  *Gamble v. Travelers Ins. Co.*, 160 S.E.2d 523, 525 (S.C. 1968).  Alternatively, the insurer shoulders the burden of establishing the exclusion to coverage.  *Boggs v. Aetna Cas. & Sur. Co.*, 252 S.E.2d 565, 568 (S.C. 1979).

## IV.    CONTENTIONS OF THE PARTIES

State Farm contends the two policies fail to obligate it to defend or indemnify MCI for the allegations in the state lawsuits.  More specifically, State Farm maintains the professional liability exclusion is applicable and defeats any claim of coverage by MCI for the state lawsuits.  In other words, State Farm argues MCI's inspecting the work of others and preparing reports was a professional service, which is precluded by the "professional services" exclusion in the two policies.

MCI insists the exclusion is inapplicable because it holds no professional licenses.  MCI also asserts the exclusion is without force because it would render the two policies meaningless.

## V.    DISCUSSION AND ANALYSIS

According to State Farm, absent from the two policies is any requirement for State Farm to defend or otherwise insure MCI against the state lawsuits.  The Court concurs.

To recap, the first policy states: "This insurance does not apply . . . to **bodily injury, property damage** or **personal injury** due to rendering or failure to render any professional services or treatments.  This includes . . . supervisory or inspection services[.]"  ECF No. 1 at 5.  And the second policy provides: "[T]his insurance does not apply to . . . [b]odily injury[,] property damage[,]

6

or personal and advertising injury arising out of the rendering or failure to render any professional service or treatment. This includes . . . [s]upervisory [and] inspection . . . activities[.]" *Id*. at 7 (internal quotation marks omitted). Consequently, it appears beyond any reasonable debate the two policies rule out any coverage concerning MCI's inspection services, which is the basis on which the plaintiffs in the state lawsuits sued MCI. Nevertheless, MCI offers two arguments to the contrary, both of which are implausible.

First, MCI suggests the exclusion is inapplicable because it holds no professional licenses. Period. There is nothing else. That is the entirety of MCI's first argument. MCI avoids advancing any basis for this assertion.

No one, of course, would suppose, suggest, or suspect it is within the purview of this Court to take a single simple sentence in a counseled case, fashion an argument, adorn it with legal citations, and then judge the strength of its own argument. It is not within the ambit of the Court's role to do so.

The Court's conclusion is braced by the Fourth Circuit's holding nothing more than a summary statement of a claim is insufficient to raise a claim. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n. * (4th Cir. 2014) (noting that failure to present legal arguments waives the argument). Consequently, this "perfunctory and undeveloped claim [by MCI is deemed] waived." *See id*.

Second, according to MCI, the two policies would be rendered meaningless if the exclusions are applied in this coverage dispute. MCI's argument rests solely on its interpretation of *Monticello*. Unfortunately for MCI, however, its dependence on *Monticello* is mislaid.

In *Monticello*, the insured exterminator sought declaratory judgment its insurance policy provided coverage for a house purchaser's claims against it alleging negligent preparation of a termite inspection report. *Monticello*, 459 S.E.2d at 318. The South Carolina Court of Appeals

agreed, holding the professional liability exclusion was inapplicable: "The internal inconsistency created by an exclusion which purports to bar coverage for claims arising out of the very operation sought to be insured renders the policy ambiguous, and we must resolve that ambiguity in favor of coverage." *Id*. at 321. The facts of this lawsuit, however, are distinguishable from *Monticello* in at least three ways.

First, in *Monticello*, the insurer had swept the insured's allegedly negligent issuance of a termite inspection letter under the professional liability exclusion of the insured's policy, even though the "policy [did] not define "professional" or "professional services." *Id*. at 321. Thus, because the issuance of termite inspection letters was not specifically listed as an uncovered activity, the court was left with the task of parsing the terms "professional" and "professional services" to determine if the insured's furnishing termite inspection letters fell under the professional services exclusion.

Here, however, the Court need not employ a similar exercise in that "inspection[s]" are specifically listed as a professional service not covered in the two insurance policies. As such, unlike the policy in *Monticello*, there is no ambiguity in the two policies.

Second, in *Monticello*, "[t]o give effect to the professional liability exclusion would render the policy virtually meaningless, because it would bar coverage for all claims arising from Isle of Palms' exterminating services, the very risk contemplated by the parties." *Id*. at 321. But, that is not what the Court has here. A review of the deposition of Herschel L. Morningstar, founder and principal shareholder of MCI, elucidates that:

> A:     I discussed it with my wife and I said—said, "I need coverage
>         so if I kick over a bucket of paint or step through a ceiling
>         while doing a value in place inspection, at least we have some
>         kind of coverage."
>
> Q:     I'm wanting to make certain that I understand the direction of
>         that conversation. You told your wife you wanted to make
>         certain that you had the kind of coverage that would protect

you if you left your briefcase in the hallway or tripped over a can of paint and broke something or you—

A:    Yes. That was—that was an internal discussion.

Q:    And she said, "Okay, I'll check on that sort of thing."

A:    Right.

Q:    Okay. Was it your understanding that the State Farm policy was that kind of policy, so that if you—somebody tripped over your briefcase that you left in the hallway, or you tripped over a can of paint and broke something in a place where you were—

A:    I don't know about the briefcase example, but---

Q.    Okay.

A:    —I—was climbing, you know, looking at the progress on roofing— and sheetrock, and I wanted to be sure that if I damaged the progress, at least there would be some umbrella coverage or something.

Q:    Okay. Was it your understanding that that's what the State Farm policy was providing to you.

. . . .

A.    Yes.

Q.    Now, we referred earlier in this deposition to professional liability insurance or Errors and Omissions insurance as being the kind of insurance that might pay if you missed something or put something down wrong in a written report.  Is that right?

A:    That's correct.

Q:    Okay.  Was it your understanding at any point in time that State Farm was providing you that kind of insurance?

A:    No.

ECF No. 24-2 at 27:4–29:7.

Having carefully reviewed this deposition, the Court is unable to accept MCI's position the

policies would be meaningless because the exclusions annul the risk envisioned by MCI and State

9

Farm when they entered into the insurance agreements. Indeed, Mr. Morningstar's understanding these two policies failed to provide "the kind of insurance that might pay if you missed something or put something down wrong in a written report[, ]" *id*. at 28:24-29:3, makes MCI's argument on this topic untenable.

Third, in *Monticello*, "[t]he declarations page of the policy included 'exterminator' in the list of covered general liability hazards, and the premium was based primarily on Isle of Palms' receipts from its exterminating business." *Monticello*, 459 S.E.2d at 321. But here, "inspector" is not listed as a covered hazard. And, it does not appear "the premium was based primarily on [MCI's] receipts from its [inspection] business." *Id*. at 321.

The Court has taken judicial notice of the appellate record in *Monticello*. *See Rodic v. Thistledown Racing Club, Inc*., 615 F.2d 736, 738 (6th Cir. 1980) (holding federal courts may take judicial notice of proceedings in other courts of record), *cited with approval in Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989). Having done so, it notes the *Monticello* record reveals the insured in that lawsuit had paid a premium for its insurance in the amount of $5,232.00 for the relevant time period. Record on Appeal at 47, *Monticello*, 459 S.E.2d 318 (No. 92-CP-10-1698). That cost is in stark contrast to the yearly rates MCI paid for its insurance, which, at a maximum, was $325. ECF. No. 24-5 and 24-6.

Experience teaches us the payment for professional negligence insurance is much higher than the cost of insurance for Mr. Morningstar "kick[ing] over a bucket of paint or step[ping] through a ceiling while doing a value in place inspection," ECF No. 24-2 at 27:6-9, or "tripp[ing] over a can of paint and br[eaking] something[,]" *id*. at 27:17-18. The difference between the cost of insurance for the insured in *Monticello*, who had insurance that included professional liability, and the amounts MCI paid for the two policies, which does not have such coverage, bears witness to that fact.

In sum, the plain meaning of the inspection exclusion negates any coverage for MCI in regards to the state lawsuits. *Monticello* does not compel a different result.

## VI.  CONCLUSION

Because MCI has been unable to establish its claim falls within the scope of his insurance contract with State Farm, but State Farm has successfully shouldered its burden of establishing the inspection exclusion to coverage, Defendants's motion for summary judgment is **DENIED** and State Farms's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

Signed this 24th day of May, 2017, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE